IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GRAYSON L. HARE, JR.,

    Plaintiff,    No. CIV S-12-0136 TLN GGH PS

    vs.

SHIRLEY J. SIMPSON, et al.,

    Defendants.    <u>ORDER and FINDINGS & RECOMMENDATIONS</u>

_____/

    Plaintiff initiated this diversity action for fraud, aiding and abetting fraud, intentional infliction of emotional distress, and civil conspiracy against various defendants on January 19, 2012 and is currently proceeding with his first amended complaint filed on May 15, 2012.  (Dkt. No. 6.)

    Presently pending before the court are defendant Shirley Simpson's motion to dismiss and motion to transfer venue, filed on November 30, 2012 (Dkt. No. 14), joined by defendants Pauline Gima, Donald Hare, and Gilbert Malone, as well as plaintiff's motion to strike, filed on December 20, 2012 (Dkt. No. 20).  Plaintiff filed an opposition to defendants' motions to strike and transfer venue.  (Dkt. No. 28.)  Defendants filed an opposition to plaintiff's motion to strike (Dkt. No. 27), to which plaintiff filed a reply and an amended reply (Dkt. No.'s

1

30, 31). The motions were submitted on the record without oral argument. (Dkt. No. 29.) After considering the papers in support of and in opposition to the motions, the court's record in this matter, and the applicable law, the court FINDS AS FOLLOWS:

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff alleges that defendants conspired to deprive plaintiff of his right to communicate with his father and his rightful inheritance of real and personal property in his father's estate ("the Hare estate"), which are all located in Maryland. Specifically, plaintiff's first amended complaint alleges that defendants committed fraud, aiding and abetting fraud, intentional infliction of emotional distress, and civil conspiracy. The relevant facts of this case, as set forth in plaintiff's amended complaint, are as follows. (Dkt. No. 6.)

Plaintiff, a California resident[1], is the son of the now deceased Grayson Hare, Sr. (Grayson Sr.) and Etta Hare. Defendant Simpson is plaintiff's half-sister, through their mother Etta Hare. Defendant Donald Hare is plaintiff's uncle, through Grayson Sr. Defendant Malone is a Pennsylvania attorney that assists defendant Simpson with her business and personal legal matters. Defendant Gima is employed by Malone as a paralegal and notary public. Defendants are all residents of Maryland or Pennsylvania.

On February 13, 2006, Etta Hare had a stroke that left her partially paralyzed. After her mother's stroke, defendant Simpson allegedly located the Hares' checkbooks and left Grayson Sr. alone in his residence. On March 14, 2006, a local representative of the Adult Protective Services (APS) informed plaintiff and defendant Simpson that Grayson Sr. was suffering from dehydration and malnutrition. The APS representative contacted plaintiff seeking permission to send Grayson Sr. to the hospital, which plaintiff granted.

/////

/////

---

[1] Plaintiff was a California resident when the action was commenced, but has since relocated to Maryland. (Dkt. No. 21.)

Defendant Simpson was at risk of losing her portion of the Hare estate if Etta Hare predeceased Grayson Sr. Shortly after Grayson Sr. was taken to the hospital, defendant Simpson "groomed" defendant Donald Hare by giving him personal property and money from the Hare estate in order to have him act as a witness and sign the deceased Hare's counterfeit will. Defendants Simpson and Donald Hare then concealed the existence of this will from plaintiff.

At some point in time, defendant Simpson instructed defendant Malone to produce fraudulent power of attorney forms giving her control of the Hare estate, with a cover letter back-dated to April 29, 2002. Defendant Gima assisted in producing these forms. Defendant Malone had a direct financial interest in producing these documents because defendant Simpson provided him with lucrative real estate and title business. Defendant Malone also received substantial sums of money from the proceeds of the Hares' residence for defending actions relating to the distribution of the Hare estate. Defendant Gima has a personal relationship with defendant Simpson that began over 20 years ago and also had a financial interest in assisting with the power of attorney forms.

Defendant Simpson used the fraudulent power of attorney forms to sell the Hares' residence in Maryland without either the Hares' or plaintiff's knowledge or consent. Defendant Simpson also admitted the Hares into a nursing home where she serves as treasurer and is personal friends with the director of the home. Defendant Simpson did not complete a written contract or give Grayson Sr. a copy of the Patient Bill of Rights. Subsequent to admitting the Hares into the nursing home, defendant Simpson transferred in excess of $400,000 from the Hares' bank accounts to accounts opened in the name of the nursing home, which defendant Simpson had authority to control.

/////

/////

/////

After Etta Hare died on February 12, 2008, defendant Simpson wrote herself a check for $5,000 from the Hares' accounts without Grayson Sr.'s knowledge or consent. Grayson Sr. died on October 16, 2008, after which defendant Simpson wrote herself another check for $5,000 from the Hares' accounts.

## MOTION TO STRIKE

The court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In his motion to strike, plaintiff argues that defendant Malone or his colleague are engaged in the unauthorized practice of law in California, that defendants committed procedural error in providing service of their motion to dismiss, and that exhibits attached to defendants' motion are inadmissible. (Dkt. No. 20.) However, a pleading is a complaint, answer to a complaint, answer to a counterclaim, answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, or a reply to an answer. Fed. R. Civ. P. 7(a). Thus, a motion to strike is not the proper vehicle for striking a motion to dismiss. Regardless, plaintiff makes no argument as a basis to strike defendants' motion to dismiss or any portion thereof. Plaintiff's contentions will be addressed in turn.

I.      Unauthorized Practice of Law in California

Plaintiff seeks to have the court strike defendants' motion to dismiss because the motion "was obviously prepared by [defendant] Malone, an attorney licensed to practice in the State of Pennsylvania, but not licensed to practice in California," in violation of Cal. Bus. & Prof. Code § 6125. (Dkt. No. 20, 2.) Alternatively, plaintiff claims that defendant Malone's associate, Leo Wallace, also an attorney in Pennsylvania, may have prepared defendants' motion to dismiss because Mr. Wallace sent plaintiff a letter regarding a settlement agreement.[2] (Id. at 3-5.)

---

[2] Defendants provided evidence supporting their contention that Mr. Wallace was pursuing his admission to this court pro hac vice no later than December 7, 2012. Dkt. No. 27, 2,9. Mr. Wallace was added as attorney on record on January 7, 2013 (Dkt. No. 25), and filed a notice of appearance on January 14, 2013 (Dkt. No. 26).

4

1        Defendants concede that defendant Malone prepared the motion to dismiss on his
own behalf and that remaining co-defendants joined the motion. Dkt. No. 27, 2. "In all courts of
the United States the parties may plead and conduct their own cases . . . personally as, by the
rules of such courts, respectively, are permitted to manage and conduct causes therein." 28
U.S.C.A. § 1654. Defendant Malone's co-defendants, each proceeding in propria persona as
well, signed the joint motion to dismiss. Dkt. No. 14, 1-2. The fact that defendant Malone is an
attorney does not alter his right to conduct his case in propria persona. As such, there is no issue
with him drafting the motion to dismiss on his own behalf.

        Defendants were joined in this action because plaintiff's right to relief was
asserted against them with respect to or arising out of the same occurrence or series of
occurrences and there are questions of law or fact common to all defendants. Fed. R. Civ. P.
20(a)(2). Plaintiff's contention that it was improper for defendants to join the motion to dismiss
instead of filing separate motions (Dkt. No. 31, 2-4) is simply wrong. This is not an instance
where a non-party attorney is drafting briefs or motions for a pro se party appearing before the
court. Nor is it an instance where a non-attorney is seeking to appear before the court on behalf
of another. That defendant Malone is an attorney appearing in propria persona, as a co-
defendant, does not alter his co-defendants' ability to join in the motion to dismiss he drafted.

        Plaintiff alleges no prejudice as a result of the alleged unauthorized practice of
law. Even if some impropriety was found with defendants joining defendant Malone's motion,
striking the motion to dismiss would be far too drastic a remedy. See Smallwood v. NCSOFT
Corp., 730 F.Supp.2d 1213, 1223 (D. Haw. 2010). Thus, there is no basis here for striking
defendants' joint motion to dismiss.

/////
/////
/////
/////

II. Improper Service of Motion to Dismiss

Plaintiff claims that defendants' motion to dismiss should be stricken because the certificate of service was not made under the penalty of perjury. (Dkt. No. 20, 5-6.) Indeed, the certificate of service attached to the defendants' motion to dismiss omits the phrase "under penalty of perjury." (Dkt. No. 14, 28) The court applauds plaintiff's attention to detail and meticulousness in reviewing the motion to dismiss and the local rules of this court in finding this violation of Local Rule 135(c). However, plaintiff failed to recognize Local Rule 102(d), which provides that this court may, unless contrary to law, make such orders contrary to the provisions of the Local Rules as it may deem appropriate and in the interests of justice and case management. Local Rule 135(c) is derived from Fed. R. Civ. P. 5, which does not contain a requirement that a certificate of service be "under the penalty of perjury." Under Rule 5, service of a paper is complete by mailing it to the person's last known address. Fed. R. Civ. P. 5(b)(2)(C).

Plaintiff acknowledges that he received his copy of the motion and provides a scanned copy of the United States Postal Service priority mail envelope, which includes his proper address, a delivery confirmation bar code, and the date November 28, 2012. (Dkt. No. 20, Ex. 1.) Plaintiff does not claim that there was any delay or other harm caused by defendants' minor procedural error. Thus, this court finds that in the interest of justice, it would be inappropriate to strike defendants' motion to dismiss in light of their violation of Local Rule 135(c).

III. Admissibility of Defendants' Exhibits

Plaintiff asserts that exhibits A-I of defendants' motion to dismiss should be stricken under Fed. R. Ev. 602[3] because defendants do not state which of the four defendants has custody of each exhibit and thus there is no way to establish which defendant has personal

---

[3] Plaintiff cites to Fed. R. Civ. P. 602, but it is clear that he intends to cite to Fed. R. Ev. 602.

knowledge of the matters in each exhibit. (Dkt. No. 20, 6.)  These exhibits are either pleadings filed by Hare in other actions, records kept by governmental agencies in the course of their duties, or have been sent to Hare.  They do not represent witness testimony, which is governed by Fed. R. Evid. 602.  Also, the court may take judicial notice of documents that do not require the acceptance of facts "subject to reasonable dispute" and are capable of immediate and accurate determination by resort to a source whose accuracy cannot be reasonably questioned.  See In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 781-82 (E.D. Cal. 1992); Fed. R. Evid. 201(b); Cal. ex. rel. RoNo, L.L.C. v. Altus Fin. S.A., 344 F.3d 920, 931 n. 8 (9th Cir. 2003).  Thus, plaintiff's argument is not a basis for a motion to strike exhibits A-I of defendants' motion to dismiss.

## MOTION TO DISMISS

In their motion to dismiss, defendants argue that no defendant is subject to the personal jurisdiction of this court, that this court is an improper venue for the complaint, that the complaint fails to state a claim upon which relief can be granted, and that plaintiff's allegation of poverty, which allowed plaintiff to proceed in forma pauperis, is untrue. (Dkt. No. 14.)  Because this court finds that it lacks personal jurisdiction over all defendants, the remaining arguments will not be addressed.

I.  Legal Standards Applicable to a Motion to Dismiss for Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2))

The party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating jurisdiction.  Pebble Beach Company v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006); Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in plaintiff's favor.  Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011); Doe v. Unocal Corporation, 248 F.3d 915, 922 (9th Cir. 2001).  It is "well established that where the district court relies solely on affidavits and discovery materials, the plaintiff need only

establish a prima facie case of jurisdiction." Rano v. Sipa Press, Inc., 987 F.2d 580, 587 n. 3 (9th Cir. 1993). In a similar vein, "when reviewing motions to dismiss" for lack of personal jurisdiction, the court "must 'accept all factual allegations [in] the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'" See Western Center for Journalism v. Cederquist, 235 F.3d 1153, 1154 (9th Cir. 2000) (quoting TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)).

While the court reviews motions to dismiss for lack of personal jurisdiction in the light most favorable to the non-moving party, "when there is a conflict between the complaint and an affidavit, plaintiff cannot rely solely on the complaint to establish jurisdictional facts." North American Lubricants Co. v. Terry, 2012 WL 1108918, at *4 (E.D. Cal. Apr. 2, 2012) (citing Data Disc, Inc., 557 F.2d at 1284). In addition, the court need not consider merely conclusory claims or legal conclusions in the complaint as establishing jurisdiction. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir.1995); China Technology Global Corp. v. Fuller, Tubb, Pomeroy & Stokes, 2005 WL 1513153, at *3 (N.D. Cal. June 27, 2005). If the court considers only written materials, plaintiff must show facts, which if true, would establish personal jurisdiction over defendants. Mattel, Inc. v. Greiner and Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003); Data Disc, Inc., 557 F.2d at 1285.

Questions of personal jurisdiction ultimately turn on concepts of due process. "A non-resident defendant may be subject to the personal jurisdiction of the court where the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice' (specific jurisdiction)." Martinez v. Manheim Central California, 2011 WL 1466684, at *1 (E.D. Cal. Apr. 18, 2011) (citing Int'l Shoe Co. v. Washington, 325 U.S. 310, 316 (1945)). When no federal statute authorizes personal jurisdiction, this court must apply California law. As California's long arm statute is coextensive with federal due process requirements, the jurisdictional analysis is the same.

Mavrix Photo Inc. v. Brand Technologies, 647 F.3d 1218, 1223 (9th Cir.2011), cert. denied, —— U.S. ——, 132 S.Ct. 1101, 181 L.Ed.2d 979 (2012); Cal. Civ. Proc. Code § 410.10.

General personal jurisdiction exists when the defendant engages in "continuous and systematic general business contacts . . . that approximate physical presence in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Id.; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Here, it is clear that this court cannot exercise general jurisdiction over any of the defendants because they do not have the requisite continuous and systematic contacts with California that approximate a physical presence. Rather, plaintiff claims that the court has specific personal jurisdiction over defendants.

The "constitutional touchstone" of specific jurisdiction is "whether the defendant purposefully established 'minimum contacts' in forum State," and the plaintiff's claim arose out of those contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Ninth Circuit utilizes a three-prong test (the Schwarzenegger test) to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Mavrix Photo, 647 F.3d at 1227–28 (quoting Schwarzenegger, 374 F.3d at 802 (in turn quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test . . . If the plaintiff fails to satisfy either of these prongs, personal

9

jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (internal citations omitted).

### A. Application of the Schwarzenegger Test

Plaintiff points to five contacts by the defendants which show that their actions were purposefully directed to the forum state: (1) defendants Simpson, Malone, and Gima created fraudulent power of attorney documents that were used to commence a probate action in Pennsylvania, (2) defendant Simpson used the fraudulent power of attorney documents to unlawfully sell Grayson Sr. and Etta Hare's home, (3) defendant Simpson filed a petition for declaratory relief in Maryland challenging plaintiff's ownership interest in Maryland properties, (4) defendant Simpson confined Grayson Sr. in a nursing home, and (5) defendant Simpson had Grayson Sr.'s cell phone confiscated at the nursing home, which plaintiff had given him so they could communicate.[4] (Dkt. No. 28, 10.)

### 1. Purposeful Availment or Direction

Under the first prong, a plaintiff "must establish that [defendants] either purposefully availed [themselves] of the privilege of conducting activities in California, or purposefully directed his activities toward California . . . A purposeful availment analysis is most often used in suits sounding in contract . . . A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Schwarzenegger, 374 F.3d at 802; see also Pebble Beach, 453 F.3d at 1155; see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Here, given plaintiff's tort claims of fraud, aiding and abetting fraud, intentional infliction of emotional distress, and civil

---

[4] This allegation first appeared in plaintiff's opposition to defendants' motion to dismiss. (Dkt. No. 28, 10.) In his amended complaint, plaintiff states that defendants interfered with plaintiff's right to freely communicate with his father under 42 U.S.C. § 1396r(c)(1)(A).

conspiracy, a purposeful direction analysis should be utilized. Indeed, no defendants entered into a contract or conducted business in California, and they received no benefit, privilege, or protection from California that would be susceptible to a purposeful availment analysis. Accordingly, a purposeful direction analysis is appropriate.

In tort cases, the typical inquiry is "whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Yahoo! Inc., 433 F.3d at 1206 (quoting Schwarzenegger, 374 F.3d at 803 (alterations in original)). The "effects" test, which is based on the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).

In Calder, the plaintiff sued Florida-based defendants in a California court claiming that she had been libeled in an article written and edited in Florida and then published in a national magazine with a large circulation in California. Calder, 465 U.S. at 784. In finding that the California court had personal jurisdiction over the Florida defendants, the U.S. Supreme Court explained that:

> The alleged libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over [the defendants] is therefore proper in California based on the "effects" of their Florida conduct in California.

Id. at 788–89. The Supreme Court further stated that the defendants knew that the article would have a devastating impact upon plaintiff in California, given that she lives and works there and that the magazine has its largest circulation in that state. Id. at 789–90.

11

Thus, "Calder stands for the proposition that [the first prong of the test for specific jurisdiction] is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." Schwarzenegger, 374 F.3d at 803 (internal citations omitted).  However, Calder "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction. . . We [ ] require 'something more' than mere foreseeability in order to justify the assertion of personal jurisdiction in California over the [foreign] defendant." Id. at 804-05 (quoting Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082 (9th Cir. 2000)).

In addressing the Calder test in his opposition to defendants' motion, plaintiff asserts that defendants expressly aimed their scheme and tortious conduct towards plaintiff and that it was foreseeable that this conduct would cause plaintiff to suffer harm. (Dkt. No. 28, 10; see also Dkt. No. 6, 3.)  However, the court need not consider merely conclusory claims or legal conclusions. Wenz, 55 F.3d at 1505.  Plaintiff has failed to show facts that would establish that the "express aim" of defendants' actions were toward plaintiff in California, which may contribute to finding this court's personal jurisdiction over defendants. See Mattel, Inc., 354 F.3d at 862; see also Data Disc, Inc., 557 F.2d at 1285.  Rather, plaintiff has alleged that each defendants' motivation was a financial interest in receiving money or personal property from the Hare estate.

Whether tortious or not, the creation of a fraudulent will, the creation of fraudulent power of attorney documents, the use of those documents to sell the Hares' home, the use of those documents to confine the Hares' in a nursing home, the restriction of communication between plaintiff and Grayson Sr., and the legal actions taken challenging plaintiff's interest in the Hare estate are all actions directly aimed at obtaining assets of the Hare estate.  Thus, it is clear that the express aim of the conduct was local, pertaining to where the assets at issue were held and where Grayson Sr. resided.

/////

1  "Where defendant's 'express aim was local,' the fact that it caused harm to the
2  plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the forum state,
3  is insufficient to satisfy the effects test." Love v. Associated Newspapers, Ltd., 611 F.3d 601,
4  609 (9th Cir. 2010) (quoting Schwarzenegger, 374 F.3d at 807). Plaintiff has alleged that
5  defendants' actions caused him harm in California, but he has failed to establish that defendants'
6  conduct was expressly aimed at causing that harm. Because "[n]one of [d]efendants' alleged
7  conduct has any nexus with California other than the fact that [plaintiff] happens to reside in
8  California[,]" the "effects test" is not satisfied. Ruppert v. Bond, 2010 WL 3618662, at *4 (N.D.
9  Cal. Sept. 9, 2010). In Ruppert, which arose from a dispute regarding the control of the deceased
10 parents' assets, one sibling claimed intentional interference with economic relations and
11 conspiracy to interfere with economic relations against another sibling and other foreign
12 defendants residing in Oregon. The court found that it would be unreasonable to exercise
13 personal jurisdiction over foreign defendants where the alleged mistreatment of the deceased and
14 alleged mismanagement of trust funds occurred in Oregon, outside of California.

15 Plaintiff has failed to carry his burden of satisfying the first prong of the
16 Schwarzenegger test. Thus, there is no need to address the second and third prongs: whether the
17 claim arose out of or relates to the defendant's forum-related activities, and whether the exercise
18 of jurisdiction comports with fair play and substantial justice. Schwarzenegger, 374 F.3d at 802.
19 As such, this court's personal jurisdiction over the defendants has not been established.

20 For the reasons outlined above, IT IS HEREBY ORDERED that plaintiff's
21 motion to strike defendants' motion to dismiss filed on December 20, 2012, (Dkt. No. 20) is
22 DENIED.

23 IT IS HEREBY RECOMMENDED that defendants' motion to dismiss filed on
24 November 20, 2012, (Dkt. No. 14) be GRANTED and this action be DISMISSED for lack of
25 personal jurisdiction.
26 /////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 10, 2013

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH: 33
hare0136.mts.mtd.wpd